## PRICE et v TAYLOR

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 11, 1932

D. W. Mumaw, Youngstown, for plaintiffs.

Wall & Bence, Youngstown, for defendants.

ROBERTS, J.

Mindful of the issues which are raised in this proceeding, it is somewhat important that reference be made to the allegations of the pleadings. It may be said that Mary Price, one of the plaintiffs, and Alice Taylor, one of the defendants, are sisters. The plaintiffs allege in their petition that in December, 1919, they sent $300 to the Taylors, then living in England, which paid for their transportation expenses to this country, and brought them to Youngstown, where they lived or stayed with the plaintiffs from the date of their arrival in December, 1919, until, as is recalled, some time in March, 1920. In the spring of 1920, the plaintiffs allege that they purchased a lot which is described in the petition, and for which they paid the sum of $375.00; that they entered into a contract with a man by the name of Dickson, a carpenter contractor, to whom they paid $650.00 for the erection of a cottage or residence upon this lot, which upon its completion was taken possession of by the Taylors. While there is no question raised in this case but that the Taylors obtained a deed to the premises from the Prices, the petition makes no such allegation, so far as we are able to observe. It is admitted, however, in the evidence of the Prices that they did receive a deed to this property.

After the completion of this dwelling, and which was conveyed to the defendants, it was claimed in addition to the $300 sent for the transportation of the Taylors, the sum of $375.00 paid for the lot and the payment of $650.00 to Dickson for the construction of the house, which was conveyed to the Taylors, that they had thereby incurred an indebtedness in the sum of $1500.00 to the Prices. The items enumerated do not reach quite that amount but it is claimed there were other items of indebtedness, and that in 1920 there was an agreement, verbal in its nature, between the parties, whereby the indebtedness of $1500 was determined and agreed upon, and that it was further agreed that the defendants should and they did at that time enter upon the making of monthly payments of $10.00 or more per month, looking to the liquidation of this indebtedness.

It is further claimed that after further payments had been made and mutual dealings had occurred, in 1923, it was agreed that the indebtedness then amounted to the sum of $1270.00, and that it was further reduced by payments and by labor on the part of the Taylors to some extent in 1929, to $753.73, to recover which sum this action was brought. Perhaps I omitted to say that the petition to which reference has been made was the amended petition. An answer had been filed to the original petition, which was refiled after the filing of the amended petition, and is to be considered as an answer to it.

In the answer it is said:

"Now comes defendants and for answer to the petition of plaintiffs say: they admit that plaintiffs paid for the transportation of these defendants from England to the United States, but only on account of the fact that plaintiffs requested defendants to come to the United States and reside with and assist plaintiffs."

While this paragraph that has just been read after admitting the receipt of $350.00, states the occasion of the cause of the furnishing of it, it does not allege as a matter of fact that it was not to be repaid. However, that contention is otherwise made in the case than by the testimony of the Taylors. The answer proceeds:

"Defendants further admit that plaintiffs purchased the real estate described in said petition, and that plaintiffs paid a certain sum of money to said W. C. Dickson for the building of a dwelling house upon said premises."

Here the defendants admit the payment of $375.00 for the lot by the Prices and the subsequent conveyance to the Prices and the payment of the $650.00 by the Prices on the construction of the dwelling. So that the defendants so far have admitted the allegations of the petition, that the

$375.00 and the $650.00 were as a matter of fact furnished by the Taylors. The defendants further, for their answer, deny each and every other allegation of the petition. Then for their cross petition they say:

"Now come defendants and incorporate herein all the statements, allegations and averments in their answer contained as though herein wholly rewritten, and say, that they were induced by plaintiffs to leave their residence in England and to come to the residence of plaintiffs in Youngstown, Ohio, for the purpose of assisting plaintiffs on account of the fact that plaintiffs and the family of plaintiffs were ill and in need of assistance; that as consideration therefor, plaintiffs agreed to, and did, pay for the transportation of these defendants on said journey, and plaintiffs conveyed to these defendants said real estate, consisting of the vacant lot described in plaintiffs' petition."

Here in the cross petition the defendants have attempted to allege what should have been in the answer, that the $300 was furnished in consideration of the Taylors coming and rendering services in the household of the plaintiffs. Then the cross petition proceeds:

"Defendants further aver that defendant, Adam Taylor, performed necessary labor in rebuilding and remodeling a dwelling house for these plaintiffs at plaintiffs' request, which said labor was reasonably worth $500, and that plaintiffs refuse to pay said amount, or any amount, to said defendant."

This is a proper allegation for a cross petition. Then follows further:

"Defendants further aver that they have paid to plaintiffs the sum of approximately $650.00 as reimbursement for money paid by plaintiffs to said W. C. Dickson, but that they are likewise unable to furnish an itemized statement showing the dates and the amounts of each payment."

This was not appropriately placed in the cross petition. It was a matter of answer and defense to the allegations of the petition. All that may properly be considered as cross petition is the allegation that Taylor did work for the plaintiffs to the extent of $500. It will further be observed that the defendants seek to relieve themselves from responsibility for the $300 sent to them by

their claim that they were to perform services in the household of the plaintiff as compensation for that sum, and they allege that they have repaid $650.00 advanced by Prices to Dickson, but they do not make any allegation of payment of the $375.00 paid for the lot. It would therefore seem to appear primarily by a construction of these pleadings that there is an admission of that much of the indebtedness claimed by the plaintiff. The issues were submitted to the court with six blank verdicts authorizing the jury to return three. Perhaps I omitted to say that there was a second cause of action on the plaintiffs' petition, whereby the plaintiff Price sought to recover a small amount for labor claimed to have been performed by him. So far as this error proceeding is concerned, however, that has been abandoned by plaintiffs in error, and further reference to it is unnecessary.

Upon the plaintiffs first cause of action, by its verdict the jury found in favor of the defendants. Whether that was supposed to be upon the proposition that the plaintiffs did not furnish the money which they claim to have furnished, can not be determined from the form of the verdict. However, it would seem to be unreasonable that that would be the fact, because the defendants admit receiving this money. Then upon the cross petition of the defendants the jury found for the plaintiffs, in effect leaving the parties as they came into the case, without finding for either one. If the burden was upon the defendants to show that they are not now or at the time of the trial were not indebted to the plaintiffs, by reason of this money which admittedly the plaintiffs furnished them, then the verdict would seem to indicate that the defendants have sustained that burden and removed the obligation in some way. However, as suggested, there does not seem to be any claim that the price of the lot was in any way paid. With a strict construction of these issues it might be somewhat questionable whether this court in an error proceeding might properly disturb the verdict of the jury in favor of the plaintiffs upon the cause of action of the defendants, it being found, in effect, that the defendants were not entitled to recover anything from the plaintiffs, and the defendants have not prosecuted error.

However, in view of the greatly complicated situations in this case, we think the jury never understood the issues or seriously attempted to determine them, or, in any event, did not do so, but probably con-

cluded that it was sort of a family quarrel and they might as well leave them where they were found.

Following what has been said as to the issues and the verdict, attention is now directed to the instructions of the court concerning which complaint is made. The instructions are of considerable length and consist first in a substantial statement of the allegations of the amended petition, the answer and the reply.

It is said on page 105, after the statement of the issues:

"First, a claim by both plaintiffs against both defendants for monies alleged to have been advanced by plaintiffs to. and for the use of defendants, which claims are denied by the defendants, whereby there arises those issues of fact to be determined by you upon that first cause of action."

This statement is misleading, because the defendants do not deny that they received the money to the extent that they attempt a defense. They try to show by affirmative claims that they do not now owe upon the plaintiffs' cause of action. Then on page 106 it is said:

"Now, the burden of proof is upon the plaintiffs to make out their case by a preponderating weight of the evidence; that is, by the greater weight of the evidence, and what we mean by greater weight of the evidence is by evidence which is more convincing and has more weight in your minds in comparison to all the other evidence offered to the contrary; it is sometimes called the greater weight of the probabilities."

Here it is observed that the court places the burden upon the plaintiffs of establishing their cause of action by a preponderance of the evidence. Ordinarily the burden of proof is upon the party who would fail in the absence of proof, and if the defendants had denied that they had ever received any of these monies claimed to have been furnished by the plaintiffs, the burden would have been upon the plaintiffs to so prove, but the defendants admit that they received these payments and attempt to explain why they should not pay for them by matters of substantially affirmative defense. Perhaps that suggestion does not apply to the first $300. It is attempted to be claimed in that case that there was a family relation, as it is affirmatively set up, that there was an understanding that the money was furnished, that the defendants

came and lived with the plaintiffs and paid by their services in that way.

So far as a presumption exists in this case, it is true that the two wives who were parties were sisters. They were not members of the same household, however. The rule is well established in this state that where an action is brought by one member of a family against others, there is no presumption of an implied promise to pay, that an implied contract is not sufficient but that it must be expressed. Whatever obligation was entered into so far as the $300 was concerned, it was preliminary to the Taylors coming to this country when the Atlantic Ocean intervened between the two parties, and there was no family relation thereafter, so that this instruction was erroneous in putting the burden of proof upon the plaintiffs to establish their cause of action. The defendants having admitted this, naturally they would fail on their side if they did not show some reason or excuse for not paying and as indicating a non-liability.

The court then proceeds at length to instruct the jury upon the proposition of what constitutes an implied contract and devotes much less time to explaining an express contract. As a matter of fact, there was but very little relating to an implied contract in this case.

All of the plaintiffs' allegations are in nature of an express contract, the agreement to repay these monies and when they were all furnished, the agreement of the parties that that constituted the sum of $1500 and the evidence shows on the part of the plaintiffs one further agreement. The amounts charged and credited had been kept, according to the plaintiffs' testimony, in two books, one kept by each woman; that the plaintiff, Mrs. Price, lost her book when there was an amount of twelve hundred and some dollars due, and then the parties got together and agreed upon what had been paid up to that time; that is, the women did—the men didn't seem to pay much attention to it,—and then the amount was carried on by endorsement in another book from that time down until the development of the amount finally sued for, so that the plaintiffs were suing upon an express contract and the defense of the defendants were simply defenses against the claim of the plaintiffs, except the defendants attempted to sue for $500 worth of work, and that was practically an express contract, as alleged, that he was asked to do this work and he did it at the request of the plaintiffs, but there was no agree-

ment so far as the compensation was concerned. So that it left that proposition to be determined on a quantum meruit; that is, if the jury determined that he performed the work, then it was a matter of proof to further determine the value of that work, so that the large amount of time which was devoted to the explaining of an implied contract would have a tendency to lead the jury away from the issues concerning express contracts and to become confused.

Again, the court says, on page 109:

"Now, if you find by the preponderance of the evidence that plaintiffs, William Price and Mary Price, loaned or advanced certain sums of money to the defendants as claimed in plaintiffs' first cause of action, under such conditions and surrounding circumstances," and so forth.

Again the proposition is put to the jury to determine whether William Price and Mary Price loaned them the money which it is admitted they furnished. Then it is said:

"If, on the other hand, you fail to find by a preponderance of the evidence that plaintiffs loaned or advanced certain sums of money to the defendants,—"

The court again considers that as a disputed proposition. Later, in the same paragraph, the court says:

"If your verdict should be for the plaintiffs as to that first cause of action, the verdict will be as to such an amount and for such items as you find by a fair preponderance of the evidence the defendants agreed either by an express contract or an implied contract to repay, if any."

The use of the word "fair" is objectionable in that connection. It is simply a preponderance of the evidence.

Without taking time to comment upon the instructions, there was another matter alleged as prejudicial error, and that was the overruling of the court of a motion made by the Prices to make Taylors' cross petition more definite and certain. It is a very brief allegation, in a general way, that he had done work for the Prices to the amount of $500. It advised the plaintiffs very little of the nature of his claim, and if able to have done so and such might reasonably be presumed, the claim ought to have been set out more in detail.

The trouble with this case primarily is the manner in which the pleadings, particularly the answer and cross petition, were drawn. It was somewhat difficult for the court to determine the issues and submit them properly to the jury. A large portion which is simply a matter of answer was incorporated in the cross petition. There was only one paragraph that properly was a cross petition. The court submitted these pleadings to the jury, instructing the jury concerning the petition and the cross petition, without any suggestion concerning matters which were improperly therein, so that, for instance, the contention of the defendants that they had paid the $650, which was merely a matter of defense, went in as part of the cross petition. It leaves the case in such a condition that this court can not determine what the jury had in mind and what it really did decide.

We think that this case should be reversed and tried over again, and suggest that that be done after the pleadings are amended into such form as to more clearly express the contentions of the parties, and we conclude that prejudicial error did not occur in the instructions of the court, and to a considerable extent the result of defective pleadings, and that a greater burden was placed upon the plaintiffs in regard to the preponderance of the evidence than the plaintiffs should properly have born.

Some intimation was made earlier in this opinion with regard to that class of contracts which must be express and where by reason of family relations a presumption of intention to pay or of indebtedness where money or things of value are furnished does not exist by reason of family relations. There was not such a family relation, although there was some degree of relationship between the women as stated, and the defendants by the preponderance of the evidence should show cause or reason why the money furnished should not be repaid.

Reading very briefly from 28 R.C.L., commencing on page 682:

"The general principle is not disputed, that the presumption of an intention not to demand pecuniary compensation for services rendered is stronger or weaker according to the proximity or remoteness of the relationship."

And it may be stated here that this rule is largely confined to a condition of members of a family.

"In the practical application of this principle, the courts have proceeded on the theory that, in any case where a relation-

ship more remote than that of parent and child is involved, something more than a relationship itself must be shown in order to overcome the effect of the primary implication that a person who accepts valuable services does so on the understanding that they are to be paid for."

So far as the three hundred dollars is concerned, there is some attempt on the part of the defendants—and it was for the jury to determine—to establish the proposition that there was an understanding that that service was not to be repaid.

The judgment of the Court of Common Pleas is reversed and the cause remanded.

FARR and POLLOCK, JJ, concur.